UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM ROQUE-MANZANO,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-3955-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel this 141-page[1] 28 U.S.C. § 2241 habeas petition, challenging his July 2026 arrest and redetention, as well as his ongoing immigration detention, as unlawful. *See* Dkt. 6. He seeks release from custody and injunctive relief related to any future redetention and his possible third-country removal. *Id.* at 49-50. Respondents filed a return to the petition, Dkt. 9, together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation

[1] The petition contains 60 footnotes and approximately 38 hyperlinks offering additional support. *See* Dkt. 6. In October 2026 alone, this District received approximately 245 petitions filed under § 2241. While the Court expects counsel to thoroughly advocate for their clients, there reaches a point where advocacy unnecessarily comes into tension with the Court's ability to expeditiously resolve habeas petitions.

Officer Nhat Truong, Dkt. 10 (“Truong Decl.”), and their counsel Alixandra Morris, Dkt. 11 (“Morris Decl.”). Petitioner filed a traverse in reply. Dkt. 13.

Having reviewed the parties’ submissions and the governing law, the Court GRANTS in part the petition, Dkt. 6, for the reasons set forth herein.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba, who first entered the United States as a Lawful Permanent Resident (“LPR”) in 1986. Truong Decl., ¶¶ 3-4. In 1990, Petitioner was convicted in the Dade County District Court of robbery and aggravated battery. *Id.* ¶ 5. As a result of Petitioner’s conviction, the Immigration and Naturalization Service (“INS”) issued an immigration detainer for Petitioner. *Id.* ¶ 6. On March 22, 1991, INS released Petitioner into the United States on his own recognizance. *Id.* ¶ 7; Morris Decl., ¶ 4, Ex. 3. INS mailed Petitioner an Order to Show Cause and Notice of Hearing, charging him with deportability pursuant to the Immigration and Nationality Act (“INA”). *See* Morris Decl., ¶ 2, Ex. 1.

On October 25, 1991, an immigration judge ordered Petitioner deported to Cuba *in absentia*. *Id.* ¶ 8; *see* Morris Decl, ¶ 5, Ex. 4. Petitioner did not appeal the order. Truong Decl., ¶ 8. Officer Truong asserts that “Petitioner did not depart the United States after his removal order and immigration officials did not then remove him to Cuba.” *Id.* ¶ 9. The record is silent regarding the Government’s efforts to remove Petitioner pursuant to his 1991 removal order. However, there is evidence in the record suggesting Petitioner was released into the United States on an Order of Supervision (“OSUP”). *See* Morris Decl., ¶ 6, Ex. 5.

On July 19, 2026, Petitioner was arrested in Miami Dade County, Florida for “battery causing bodily harm (domestic violence).” Truong Decl., ¶ 10. The following day, ICE’s Office of Enforcement and Removal Operations (“ERO”) lodged an immigration detainer with the

Turner Guilford Knight Correctional Center, which had custody of Petitioner after his battery arrest. *Id.* ¶ 11. ICE revoked Petitioner's release, alleging that Petitioner's arrest for battery violated his conditions of release and authorized revocation under 8 C.F.R. § 241.13(i). *See* Morris Decl., ¶ 6, Ex. 5. On July 28, 2026, Petitioner was transferred to the NWIPC, where he remains detained. *Id.* ¶ 12. Petitioner asserts he "does not recall any ICE officer providing him notice of the reason for his detention nor affording him an interview or any other opportunity to contest his detention." Dkt. 6 at 8.

On September 15, 2026, the battery charge "was dismissed at [the] arraignment [hearing]." Dkt. 6 at 8.

On September 22, 2026, ERO "submit[ted] Petitioner's case to Cuban officials for consideration of repatriation," which was denied the following day. Truong Decl., ¶¶ 13-14. ERO thereafter served Petitioner with notice of third-country removal to Mexico, which Petitioner refused to acknowledge or sign. *Id.* ¶ 15.

Officer Truong asserts that on October 26, 2026, "ERO began the process of post-order custody review[.]" *Id.* ¶ 16. Petitioner was also served notice of custody review and a warning for "Failure to Depart" (Form I-229(a)). *Id.* On October 29, 2026, "ERO's Acting Deputy Field Office Director determined to continue detention." *Id.* ¶ 17.

Petitioner filed the instant petition on October 19, 2026. Dkt. 6.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C.

§ 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises four claims for relief. First, he asserts that his continued detention violates the Fifth Amendment Due Process Clause because there is no significant likelihood that he will be removed in the reasonably foreseeable future. Dkt. 6 at 43-44 (citing *Zadvydas*, 533 U.S. at 701). Next, he asserts that his July 20, 2026, arrest and revocation of his release without process violated his procedural due process rights when assessed under the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id.* at 44-46. He also seeks injunctive relief under the Fifth and Eighth Amendments, federal statute, and federal regulations, arguing that his removal to a third country would be unlawful. *Id.* at 46-50.

In response, Respondents assert that "[t]his case presents an unusual custody history" because there is "no evidence that . . . INS ever re-detained [Petitioner] following issuance" of the 1991 removal order. Dkt. 9 at 1. Thus, Respondents argue that his July 2026 "marks the commencement of the presumptively reasonable post-order detention period articulated in *Zadvydas*[.]" *Id.* at 2. As for Petitioner's redetention claim, Respondents contend Petitioner's case is procedurally distinct because there has not been a *re*-detention after his removal order became final. Dkt. 9 at 11-12. According to Respondents, this makes Petitioner's case different from others from this District assessing the lawfulness of a noncitizen's redetention. *Id.*

As for Petitioner's request for enjoining his third-country removal, Respondents assert that Petitioner is precluded from seeking that relief here because he is a class member as defined in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025), *opinion clarified,* No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion*

*clarified,* No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025), and *appeal dismissed and remanded,* No. 25-1393, 2026 WL 1102937 (1st Cir. Feb. 20, 2026), and *aff'd in part,* 192 F.4th 74 (1st Cir. 2026), and is thus required to litigate his request in that case. Dkt. 9 at 13-18.

**A. *Mathews* and Procedural Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "Due process generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). As an initial matter, the Court is not persuaded that *Mathews* is inapplicable to Petitioner's circumstances because his initial discretionary release

was ordered before his removal order became final. *See* Dkt. 9 at 12. First, that assertion is not supported by the record. Petitioner's July 21, 2026, Notice of Revocation indicates Petitioner was released on an OSUP on October 25, 1991, the same day his removal order was issued. Orders of Supervision are authorized under 8 U.S.C. § 1231—the statute governing the detention and removal of noncitizens ordered removed. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5(a). Regardless, whether a noncitizen habeas petitioner is challenging the revocation of their pre-final-removal order discretionary release, or a post-final-order revocation of an Order of Supervision, courts in this District apply *Mathews* to assess whether due process entitled them to notice and an opportunity to be heard before they are taken back into custody. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1320-24 (applying *Mathews* to revocation of a pre-final-order revocation of an order of release); *Palencia v. Hermosillo*, No. C25-2669-BAT, 2026 WL 125141, at *6-9 (W.D. Wash. Jan. 16, 2026) (applying *Mathews* to revocation of a post-final-order OSUP).

First, Petitioner had a liberty interest in his continued freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Although DHS records are unclear, it is undisputed that Petitioner remained out of custody since his removal order was issued in 1991 and there is no evidence the Government sought to effectuate Petitioner's removal for the next thirty-five years. And as noted above, there is evidence that Petitioner was released on an Order of Supervision shortly after his removal order was entered, the revocation of which was entitled to due process. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Diego Francisco v. Noem*, 2026 WL

295211, at *4 (W.D. Wash. Feb. 4, 2026) (finding noncitizen previously released on an OSUP had a liberty interest in remaining free that was "significantly hampered" by its revocation). This factor favors Petitioner.

The Court also finds there was a high risk of error in revoking Petitioner's release and that additional procedural safeguards would have been valuable in ensuring such error did not occur. The Government is authorized to revoke a noncitizen's OSUP if they violate conditions of their release or if DHS determines "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). So, while Respondents assert Petitioner's criminal arrest violated the conditions of his release, *see* Morris Decl., ¶ 6, Ex. 5 at 2, neither Petitioner's OSUP, nor the corresponding conditions of release, are in the record. Further, Petitioner's battery arrest—which appears to have been the sole basis for revoking his release—was dismissed at arraignment on September 15, 2026. Yet, nothing in the record suggests the dismissal had any effect on Respondents' decision to keep Petitioner in custody or reassess whether removal efforts should continue. Federal regulations also required ICE to provide an informal interview to afford petitioner an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). There is no evidence that informal interview occurred. Pre-deprivation process would have provided an opportunity to challenge the legal bases for Petitioner's detention and the decision to keep him detained. This factor favors Petitioner.

As for the final factor, the Government certainly has an interest in effectuating removal orders and ensuring noncitizens comply with orders of supervision. However, neither of those interests required forgoing pre-deprivation process. The record lacks any evidence showing Petitioner posed a danger to the community or a risk of absconding—the two regulatory goals

addressed by civil immigration detention, which itself is assumed to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Accordingly, the Court does not find Respondents have identified an interest that necessitated redetaining Petitioner without pre-deprivation process. This factor favors Petitioner.

All three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset and the absence of exigent circumstances, release is the appropriate, constitutionally required remedy. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

In finding Petitioner is entitled to release from custody under *Mathews*, it need not reach Petitioner's indefinite detention claim under *Zadvydas*. Dkt. 6 at 43-44. That claim is accordingly dismissed as moot.

**B. Injunctive Relief**

Petitioner also seeks to enjoin his future redetention without the Government first satisfying certain criteria. Dkt. 6 at 49-50. While Petitioner has demonstrated his July 22, 2026, redetention was unlawful under *Mathews*, it does not necessarily follow that he remains subject to the same "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003). Petitioner's request to enjoin his redetention is denied without prejudice.

Petitioner also seeks to enjoin his third-country removal unless the Government first provides notice and an opportunity to respond in reopened removal proceedings. Dkt. 6 at 50. He also seeks to enjoin his removal to any country "where he is likely to face imprisonment or other punishment upon arrival." *Id.* In essence, Petitioner asserts that recent DHS guidance conflicts with due process because it allows ICE to remove noncitizens to certain third countries that have "provided credible diplomatic assurances" that noncitizens will not be persecuted or tortured without providing adequate notice or opportunity to raise a fear-based claim. Dkt. 6 at

37-41; *see id.*, Ex. 10. Respondents acknowledge this challenged guidance and do not disavow that it continues to guide ICE's third-country removal practices. *See* Dkt. 9 at 8. Instead of addressing the merits of Petitioner's claim, Respondents maintain that *D.V.D.* class membership bars his claim.[2] Dkt. 9 at 13-18.

Courts in this District have found, as early as August of 2025, that DHS's July 2025 guidance is in tension with binding Ninth Circuit precedent:

> "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citing *Kossov [v. I.N.S.]*, 132 F.3d [405, 408–09 (7th Cir. 1998)]; *see also Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (citing *Andriasian*, 180 F.3d at 1041); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004)[, *as amended* (Aug. 24, 2004), *amended sub nom. El Himri v. Ashcroft*, No. 03-71152, 2004 WL 1879255 (9th Cir. Aug. 24, 2004)].

*Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

Here, it appears Respondents have abandoned efforts to remove Petitioner to Cuba—the country designated on his removal order. Respondents have since provided notice of removal to Mexico, which Petitioner declined to acknowledge and sign. Truong Decl., ¶ 15. It is thus likely that Respondents will continue efforts towards removing Petitioner to a third country. In the event Petitioner fears removal to that yet-designated country, "[t]he Fifth Amendment requires

---

[2] Respondents "acknowledge that courts in this District have granted injunctive relief after finding that *D.V.D.* does not preclude their claims here[,]" *see* Dkt. 9 at 17-18 (and the cases cited therein), but argue "since [those] decisions, the Supreme Court has granted certiorari and issued a third stay . . . of the district court's order and judgment." *Id.* at 18. For the reasons articulated in *Mengustu-Mebrehatu v. Blanche*, No. C26-3562-DGE, 2026 WL 3319519, at *3 n.2 (W.D. Wash. Nov. 3, 2026), this Court similarly does not find the current posture of *D.V.D.* bars Petitioner's request for individual injunctive relief.

that ICE provide a meaningful opportunity for [P]etitioner's claim of fear to be heard[,] and "[t]he guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). Diplomatic assurances from that designated country "are insufficient to satisfy due process." *Id.* Accordingly, should ICE seek to remove Petitioner to a country other than Cuba, Petitioner is first entitled to present a claim for relief in reopened removal proceedings under 8 U.S.C. § 1231(a)(3).

As for Petitioner's claim that DHS's third-country removal scheme constitutes unconstitutional punishment or banishment, the record is insufficiently developed to order permanent injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the amended habeas petition, Dkt. 6, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions of the OSUP in effect at the time of his redetention. Respondents shall file a status report with the Court within **forty-eight (48) hours** that Petitioner has been released. Petitioner's first cause of action under *Zadvydas* is DENIED as MOOT. Petitioner's request for permanent injunctive relief is GRANTED in part. Should Respondents seek to remove Petitioner to a country other than that designated on his removal order, Respondents shall move to reopen Petitioner's removal proceedings to allow Petitioner to present a full claim for relief under 8 U.S.C. § 1231(b)(3). Petitioner's remaining claims for injunctive relief are DENIED without prejudice. Any fee petition shall be filed within the deadlines set by

//

//

the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Dated this 25th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge